# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DANIEL WHITE et al.,       )
                                 )
        **Plaintiffs,**      )
                                 )
**v.**                           )     **Case No. 3:23-cv-01169**
                               )     **Judge Aleta A. Trauger**
**DOLGENCORP, LLC,**     )
                               )
        **Defendant.**     )

## MEMORANDUM

Plaintiff Daniel White and the seventy-four other named plaintiffs are all current or former employees of Dolgencorp, LLC ("Dolgen"). They have filed a Complaint (Doc. No. 1) against Dolgen, collectively asserting a single claim under the Fair Labor Standards Act ("FLSA") based on allegations that they were unlawfully denied overtime compensation during their employment. (Doc. No. 1 ¶ 3.) Each plaintiff worked as a Store Manager at one or more Dollar General Stores, operated by Dolgen, within the past three years.[1] The Dolgen stores at which they worked are in Tennessee (four plaintiffs), Alabama (eight plaintiffs), Arkansas (three plaintiffs), Florida (eight plaintiffs), Georgia (six plaintiffs), Iowa (two plaintiffs), Illinois (one plaintiff), Indiana (one plaintiff), Kentucky (one plaintiff), Louisiana (two plaintiffs), Massachusetts (one plaintiff), Michigan (two plaintiffs), Missouri (three plaintiffs), Mississippi (six plaintiffs), North Carolina (three plaintiffs), Nebraska (one plaintiff), New York (one plaintiff), Ohio (three plaintiffs),

---

[1] One individual, Melinda Trinidad, is listed as a plaintiff in the case caption and referenced in paragraph 101, but the Complaint does affirmatively aver that she worked for Dolgen in any capacity or identify the store in which she might have worked.

Oklahoma (three plaintiffs), Pennsylvania (three plaintiffs), South Carolina (five plaintiffs), Texas (three plaintiffs), and West Virginia (four plaintiffs). (Doc. No. 1 ¶¶ 14–87.)

Now before the court is Dolgen's Motion to Sever and Transfer (Doc. No. 29), which asks the court, first, to sever the claims of all plaintiffs except first-named plaintiff Daniel White, who is the only plaintiff alleged to have worked at a store located within the geographic reach of the Middle District of Tennessee,[2] and, second, to transfer the severed claims (individually or by groups) to the various federal districts and divisions in which those plaintiffs worked and in which their claims arose. The defendant filed a Memorandum in support of its motion (Doc. No. 30 (redacted, unsealed), Doc. No. 33 (unredacted, sealed)), along with nine Declarations and three charts summarizing the evidence contained in the Declarations (sealed and unsealed version attached as exhibits to the sealed and unsealed versions of the Memorandum). The plaintiffs have filed a Response opposing both severance and transfer and also requesting that, if the court is inclined to grant the defendant's motion, they be permitted to file an amended complaint, reframing this case as a collective action under the FLSA. (Doc. No. 38, with corrections noted in Doc. No. 39.) The defendant filed a Reply (Doc. No. 48).

For the reasons set forth herein, the defendant's motion will be granted, but the plaintiffs will be given the opportunity to seek leave to amend the Complaint.

---

[2] Three other plaintiffs are alleged to have worked in stores located in Tellico Plains, Rogersville, and Kingsport, Tennessee, which are located in Monroe, Hawkins, and Sullivan Counties. These counties fall within the Northern and Northeastern Divisions of the Eastern District of Tennessee. 28 U.S.C. § 123(a)(1) & (2).

## I.     THE MOTION TO SEVER

### A.     Legal Standards

#### 1.     Rules 20 and 21 of the Federal Rules of Civil Procedure

Dolgen's Motion to Sever involves an interplay between Rule 21 of the Federal Rules of Civil Procedure (Misjoinder and Nonjoinder of Parties) and Rule 20 (Permissive Joinder of Parties). Rule 20 provides that "[p]ersons may join in one action as plaintiffs if" they satisfy two criteria: (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A) & (B). Joinder is generally favored under the federal rules and is liberally permitted. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

At the same time, however, the remedy for misjoinder is severance under Rule 21, which provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The failure to satisfy both prongs of Rule 20 provides a basis for severance. *Monda v. Wal-Mart, Inc.*, No. 3:19-cv-155, 2019 WL 7020427, at *4 (S.D. Ohio Dec. 20, 2019) (quoting 4 James Wm. Moore *et al., Moore's Federal Practice* ¶ 21.02[1] (2019)). But even if the Rule 20 criteria are met, courts maintain the discretion to sever defendants under Rule 21. *See Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) ("The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." (citation omitted)); *see also Productive MD, LLC v. Aetna Health, Inc.*, 969 F.Supp.2d 901, 940 (M.D. Tenn. 2013) ("District courts have broad

discretion to determine whether to sever claims when doing so advances the administration of justice." (citations omitted)).

Factors relevant to the exercise of that discretion include whether settlement of the claims or judicial economy would be facilitated; whether permissive joinder would result in prejudice to the parties; and whether different witnesses and documentary proof are required for separate claims. *Parchman*, 896 F.3d at 733 (quoting *Productive MD*, 969 F. Supp. 2d at 940). The court should "examine whether permissive joinder would comport with the principles of fundamental fairness" and "may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *LaPine v. Lincoln*, No. 1:19-CV-120, 2022 WL 2913990, at *4 (W.D. Mich. July 25, 2022) (citation omitted).

It is appropriate to address potential misjoinder at an early stage of the case. *Monda*, 2019 WL 7020427, at *2 (collecting cases). However, when a motion to sever is filed before any discovery has been conducted, the court is typically "limited to the allegations in Plaintiffs' Complaint in determining whether the Plaintiffs have properly joined their claims in one action." *Dejesus v. Humana Ins. Co.*, No. 3:15-CV-862-GNS, 2016 WL 3630258, at *3 (W.D. Ky. June 29, 2016) (citing *Harper v. Pilot Travel Ctrs., LLC*, Case No. 2:11-cv-759, 2012 WL 395122, at *4 (S.D. Ohio Feb. 7, 2012)). The court also finds it appropriate to consider the defendant's factual material, to the extent it is consistent with the plaintiffs' allegations.

## 2. The FLSA's Executive Exemption to the Overtime Pay Requirement

The FLSA generally requires covered employers to compensate any employee who works more than forty hours per workweek "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, the FLSA exempts from this overtime pay requirement any employee who is employed "in a *bona fide* executive, administrative, or

professional capacity." 29 U.S.C. § 213(a)(1). "Congress did not define these exemptions, but delegated authority to the Department of Labor . . . to issue regulations to define and delimit these terms." *Perry v. Randstad Gen. Partner (US) LLC*, 876 F.3d 191, 196 (6th Cir. 2017) (citation omitted).

Dolgen classified the plaintiff Store Managers as exempt under the FLSA's executive exemption. Under the version of the governing regulations in effect during the three years prior to the filing of this lawsuit, an employee was "employed in a *bona fide* executive capacity" for purposes of the FLSA if:

(1) she was "[c]ompensated on a salary basis . . . at a rate of not less than $684 per week" (which is not disputed here);

(2) her "primary duty" was "management of the enterprise in which the employee is employed";

(3) she "customarily and regularly direct[ed] the work of two or more other employees"; *and*

(4) she had "the authority to hire or fire other employees or [her] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight."

29 C.F.R. § 541.100 (Effective: January 1, 2020 to June 30, 2024).

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701 (2016). It refers to tasks that are "normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* The term "management" generally encompasses

activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be

bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102 (2016).

"Primary duty" is defined by the regulations as well. An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a) (2014). "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." *Id.* § 541.700(b). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Id.* However, time alone "is not the sole test." *Id.* Instead, the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

Because the application of an exemption is an affirmative defense, the employer has the burden to establish each element of an exemption by a preponderance of the evidence. *Hendricks v. Total Quality Logistics, LLC*, 694 F. Supp. 3d 1005, 1016 (S.D. Ohio 2023) (citing *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007)). "Because the FLSA gives no textual indication that its exemptions should be construed narrowly, exemptions must be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018) (citations omitted). Generally, "the determination of whether an employee is exempt is an inquiry that is based on the

particular facts of his employment and not general descriptions." *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 689 (6th Cir. 2001); *see also Hendricks*, 694 F. Supp. 3d at 1017.

### B.     Facts and procedural history

#### 1.     Allegations in the Complaint

Defendant Dolgen operates more than 17,000 stores and employs more than 150,000 employees. (Doc. No. 1 ¶ 1.) Its corporate office is in Goodlettsville, Tennessee, and it is subject to general personal jurisdiction in Tennessee. (*Id.* ¶ 6.) It is an employer subject to the FLSA's requirements. (*Id.* ¶¶ 7–9.)

For more than three years prior to the filing of this lawsuit, Dolgen has required employees with the job title of Store Manager to work more than forty hours per week for a fixed salary, with no overtime compensation. (*Id.* ¶ 4.) As set forth above, each plaintiff worked for Dolgen as a salaried Store Manager within the last three years. (*Id.* ¶¶ 14–87.) The plaintiffs allege that Dolgen classifies all Store Managers as exempt from the FLSA's overtime requirements, "without regard to store size, sales, geographic location, [or] the number employed at each store." (*Id.* ¶ 88.) The plaintiffs have routinely worked in excess of forty hours per week, averaging fifty-six to sixty-seven hours per week, but are not paid overtime compensation for any hours worked over forty. (*Id.* ¶¶ 94–95.)

Dolgen classifies Assistant Managers, Training Store Managers, and Store Manager Leaders as non-exempt employees entitled to overtime compensation. (*Id.* ¶ 90.) However, these hourly paid employees are "in charge of the store" at which they work whenever a Store Manager is not working during their assigned shifts. (*Id.* ¶ 91.)

The plaintiffs assert that they should not be deemed exempt from the FLSA's overtime requirements, because:

a. Their work was substantially similar to that performed by non-exempt, employees, including but not limited to, hourly paid managerial employees such as Assistant Managers, Training Store Managers, and Store Manager Leaders.

b. They could not exercise independent discretion and authority as to matters of significance. For example,

    i. To ensure consistent internal and external customer experiences and service, Dolgencorp maintained and enforced a proprietary manual of more than 200 detailed standard operating procedures that control every aspect of the retail store's operations, *e.g.*, employees' dress code; how early to arrive at the store before its scheduled open; how to greet customers, thank customers, and bid customers farewell; how often to check for messages; how to pack plastic bags at checkout; how to organize the store's retail space; how to organize the store's office and files; how to clean the store after rodent eradication, etc.

    ii. Dolgencorp predetermined the merchandise sold at each store, and par levels for inventory and restocking.

    iii. Dolgencorp selected and purchased merchandise sold in Plaintiffs' stores.

    iv. Dolgencorp determined when the store could place orders, when shipments would arrive at the store, and how shipments were processed after receipt.

    v. Sales records were automatically generated and maintained by Dolgencorp's system.

    vi. Dolgencorp predetermined the staffing for each store and what positions should work each shift and when.

    vii. Plaintiffs could not unilaterally exceed Dolgencorp's pre-determined allotted hours or assign employees to work more than those hours.

    viii. Dolgencorp controls the rates of pay paid to the store's non-exempt employees.

    ix. Dolgencorp's corporate policy uniformly controls the administration of benefits, including leave.

    x. Because Dolgencorp did not provide enough hours to fully staff the store with non-exempt hourly-paid employees, or because non-exempt employees were unwilling to work the limited hours Dolgencorp made available, certain Plaintiffs did not routinely supervise the equivalent of two full time employees as required under 29 C.F.R. §541.104.

(Doc. No. 1 ¶ 96.) Regarding this final subparagraph, the Complaint identifies forty of the seventy-five plaintiffs who allegedly "did not routinely supervise the equivalent of two full time employees." (*Id.* ¶ 96(x).)

> In addition, the Complaint alleges that the plaintiffs, as Store Managers,
>
> did not set or adjust store employees' pay; determine the techniques used to operate the store; determine the products, supplies and equipment or vendors utilized by the store or stocked and sold; maintain production or sales records used for management or control of the store; control the flow and distribution of materials and merchandise; plan and control the budget; or monitor and implement legal compliance measures.

(*Id.* ¶ 97.) In addition, even though Dolgen's standard operating procedures and other documents confer discretion or authority upon Store Managers, they also allow District Managers or Regional Managers to limit or eliminate that discretion, and the plaintiffs allege that the District Managers or Regional Managers over the plaintiffs did, in fact, limit the plaintiffs' discretion beyond what was required in writing. (*Id.* ¶¶ 98–99.) Fifteen of the plaintiffs, for example, were expressly not authorized by their supervising managers to discipline, hire, or fire employees. (*Id.* ¶ 100.) Two employees could "administer certain levels of discipline, but not independently hire or fire employees." (*Id.* ¶ 101.) And twenty-two additional plaintiffs could hire employees but could not independently discipline or fire employees. (*Id.* ¶ 102.)

The Complaint further asserts that, because Dolgen "failed to pre-determine and provide Plaintiffs enough hours assignable to hourly employees," the plaintiffs were routinely responsible for unloading and unpacking delivery trucks and readying merchandise for sale. (*Id.* ¶ 103.) They were required to process shipments outside normal business hours because of routine staffing shortages. (*Id.* ¶ 104.) Their managerial duties were allegedly minimal compared to the number of hours they worked and the non-managerial tasks they performed, the latter of which they estimate to have taken more than eighty percent of their time. (*Id.* ¶¶ 105–07.) These non-managerial tasks

included customer service, running the cash registers or watching self-checkout, monitoring for theft, performing janitorial duties, and recovering, unpacking, and stocking merchandise. (*Id.* ¶ 108.) The plaintiffs maintain that their primary responsibility was sales rather than management. (*Id.* ¶ 109.) The plaintiffs claim that they effectively had the same level of authority and performed the same primary job responsibilities as hourly paid Assistant Managers, Training Store Managers, and Store Manager Leaders. (*Id.* ¶ 107.)

Relying on these allegations, the plaintiffs assert a single "count" against Dolgen for misclassifying them as exempt employees based solely on their job title and irrespective of their actual job duties, the time spent performing managerial duties, the number of employees supervised, the size or revenues of their stores, or other factors normally relevant to the application of the exemption. The plaintiffs assert that joinder of all their claims in one action is appropriate, "because their claims arise out of Dolgencorp's single policy or decision, and questions of law or fact common to all Plaintiffs will arise in the action." (*Id.* ¶ 117.)

### 2. Dolgen's Factual Assertions

Dolgen filed an Answer to the Complaint, denying that all of the named plaintiffs were employed as Store Managers, admitting that Store Managers are paid on a salary basis as part of their compensation, and asserting that, as such, they are properly exempt from the FLSA's overtime requirements under the FLSA's executive exemption. (*See generally* Doc. No. 13.) It also raised improper joinder as an affirmative defense. (*Id.* at 14–15.) Its Motion to Sever followed.

In support of that motion, Dolgen explains that its "nationwide retail store network" is divided into nine geographical Divisions. (Doc. No. 33-1, Connow Decl. ¶ 4.) Each Division is divided into ten or eleven Regions, and each Region is further divided into Districts. (*Id.*) Each District is led by a District Manager, and there are typically fifteen to twenty retail stores within each District. (*Id.*)

Each Dollar General store is led by a single Store Manager who supervises other employees, usually including one or more Assistant Store Managers, one or more Lead Sales Associates, and multiple Sales Associates. (*Id.* ¶ 6.) The number and makeup of employees varies by store based on factors including the store's size and sales volume. (*Id.*) Outside of California, all Store Managers are classified as exempt under the FLSA. (*Id.*) The Store Manager is the only exempt employee at each of the plaintiffs' stores. (*Id.*) Dolgen offers the Declarations of seven different District Managers, each of whom attests that he or she supervises approximately twenty stores and that the stores within each district (and from district to district) vary widely in terms of the clientele (rural or urban), the products they sell and the number and type of deliveries they receive each week (dry goods, refrigerated and frozen goods, fresh produce, meat products—with some stores that sell fresh produce and/or meat and some that do not), the number of deliveries from third-party vendors, physical size and sales volume, "shrink" volume (the amount of theft), staffing needs and employee turnover, and even business hours. (*See generally* District Manager Declarations, Doc. Nos. 33-3 through 33-9.) In addition, the Store Managers of the different stores within each District are subject to varying degrees of oversight, based on the Store Managers' level of experience and on how particular stores are performing, and some have more discretion than others in taking personnel action independently. (*Id.*) According to Dolgen, each store has a "complexity" tier, which is a numerical rating from one to six. (Connow Decl. ¶ 11.) The complexity tier is based on a combination of the store's annual sales volume and "optimized shrink."[3] (*Id.*) And each Store Manager's base salary derives in part from his or her store's complexity tier. (*Id.*)

---

[3] "Optimized shrink is a target shrink number for a specific store that is determined based on various external factors and local conditions." (Doc. No. 33 at 10 n.9.)

### 3. The Parties' Arguments

Dolgen's position, in essence, is that the plaintiffs, by invoking the joinder rule to combine their separate claims in one lawsuit, have effectively sought to conduct an unauthorized FLSA collective action.[4] (Doc. No. 33 at 2.) It argues that such joinder is improper, because the determination of whether the exemption was appropriate in each plaintiff's case will necessarily require a highly fact-specific analysis of the particular circumstances of each plaintiff's work setting, including consideration of whether they supervised the equivalent of two full-time employees, whether their primary duty was "management," and how much authority they had to make personnel decisions, including hiring, firing, and disciplining other employees. (*Id.*)

More specifically, Dolgen argues that the seventy-five plaintiffs are misjoined under Rule 20, because they cannot establish that their claims for FLSA overtime "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," for purposes of Rule 20(a)(1)(A). Instead, each "arises independently" and will succeed or fail "based on [the plaintiffs'] separate experiences," each "requiring separate witnesses and evidence, resulting in separate factual and legal determinations." (*Id.* at 13.) It asserts that, even if "*some* common facts or documents reflecting Dollar General's corporate policies and directives exist[,] [t]he critical analysis will focus on how each [Store Manager] performed his or her responsibilities in his or her assigned store." (*Id.*)

---

[4] The FLSA allows employees to bring collective actions against employers for unpaid wages where the employees are "similarly situated" to one another. 29 U.S.C. § 216(b). "Similarly situated" employees can "opt into" a collective by filing a written consent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The Sixth Circuit has recognized that the "similarly situated" analysis "is less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)).

Dolgen further argues that, even if the court finds that joinder of all seventy-five plaintiffs is proper under the Rule 20 criteria, the court should exercise its discretion under Rule 21 to sever the claims that arose in different districts, because resolving the question of whether the exemption was properly applied to each plaintiff will, again, require

> individualized inquiries into how Plaintiffs operated their respective stores, spent their respective time, and managed their respective personnel, resulting in a series of mini-trials that would be unmanageable and prejudicial to all parties. Both Dollar General and Plaintiffs would rely on individualized evidence and testimony about each Plaintiff's actual working conditions and managerial priorities in order to support their individual claims or defenses. The witnesses who will provide such testimony, including the 75 Plaintiffs themselves, their respective District Managers, and their respective store staff, are scattered across the country. Critical testimony from key witnesses regarding how each Plaintiff operated his or her store will not be found at Dollar General's headquarters (which is in the Middle District of Tennessee), but rather in these witnesses' respective home states and other judicial districts. . . . Trial in Nashville would be an unworkable, logistical nightmare of 75 separate mini-trials and hundreds of witnesses.

(Doc. No. 33 at 2–3.) Dolgen also asserts that courts have "routinely" severed FLSA claims involving large numbers of employees who worked in widely scattered geographic regions. (*Id.* at 14–15 (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir. 2010); *Costello v. Home Depot U.S.A.*, 888 F. Supp. 2d 258 (D. Conn Apr. 10, 2012); *Hernandez v Best Buy Stores, L.P.*, No. 13cv2587 JM(WVG), 2016 WL 1110265, at *1 (S.D. Cal. Mar. 22, 2016)).)[5]

---

[5] The court observes that all three of these opinions were issued after a substantial amount of discovery had been conducted. Indeed, it appears that most cases addressing motions to sever or for permissive joinder in the FLSA context arise after the plaintiffs were conditionally granted leave to proceed as a collective action but, following discovery, the courts "decertified" the case as a collective action as a result of a finding that the plaintiffs were not similarly situated as required by 29 U.S.C. § 216(b). These courts have found that joinder in that situation is improper, given that the standard for joinder is more stringent than that for a finding of substantial similarity under § 216(b). *See, e.g.*, *Alverson v. Elkhart Prods. Corp.*, No. 5:21-CV-05191, 2022 WL 130744, at *2 (W.D. Ark. Jan. 13, 2022) ("Just as these 43 plaintiffs were not sufficiently similarly situated to proceed in a collective action, they are not sufficiently similarly situated to proceed as joint plaintiffs under Rule 20."); *Botero v. Commonwealth Limousine Serv. Inc.*, 302 F.R.D. 285, 287 (D. Mass. 2014) ("Joinder is thus not warranted here because plaintiff has already failed to convince this Court that the experiences of the various chauffeurs at Commonwealth are susceptible to FLSA [collective] treatment. As such, it can hardly be said that the factual scenarios

The plaintiffs argue in response that common questions of law or fact exist, as required by Rule 20(a)(1)(B)—namely the common fact that Dolgen applied the executive exemption across the board to all Store Managers and the legal question of whether the exemption is appropriate under the FLSA and implementing regulations. Dolgen, however, does not dispute the existence of common questions of law or fact, at least for purposes of its Motion to Sever. (*See* Doc. No. 33 at 13 ("It does not matter that some common facts or documents reflecting Dollar General's corporate policies and directives exist.").)

The plaintiffs also assert that their claims arise out of the same transaction or occurrence or series of transactions or occurrences, because they arise from the same "factual background." (Doc. No. 38 at 5.) That is, they were employed by Dolgen as Store Managers during the same three-year period preceding the filing of the Complaint; they all were required to work more than forty hours per week; and they were all denied overtime pay for hours worked in excess of forty. Based on this factual "background," the plaintiffs maintain that Dolgen's "consistent application" of a company-wide policy of classifying Store Managers as exempt employees and denying them overtime pay constitutes "compelling grounds for permissive joinder." (*Id.* at 5–6.) They do not actually dispute Dolgen's contention that the validity of the exemption will be controlled by their individual factual circumstances. Instead, they assert that the differences in each plaintiff's situation alleged by Dolgen "are only relevant to [Dolgen's] claimed executive exemption defense," rather than to the plaintiffs' *prima facie* FLSA claims and, moreover, that Dolgen has

---

of the 14 'opt-ins' stem from the same 'transaction or occurrence' or 'share an aggregate of operative facts.'"); *Pullen v. McDonald's Corp.*, Nos. 14-11081 & 14-11082, 2015 WL 10550020, at *2 (E.D. Mich. Aug. 17, 2015) (denying a motion to amend the complaint to add as named plaintiffs 59 former opt-in plaintiffs from a decertified collective action, observing that "this court previously has found that Plaintiffs failed to meet the less stringent standard for FLSA section 216(b) certification" and that "Plaintiffs' motion for leave to amend their amended complaint is an attempt at an end [run] around the court's previous denial of conditional certification").

not presented evidence that "it made individualized exemption decisions" based on the plaintiffs' individualized circumstances. (*Id.* at 7.)

The plaintiffs also take issue with Dolgen's purportedly failing to identify actual differences among the existing plaintiffs and instead generally asserting that "there are expected differences between stores that affect the duties of store managers over-all." (*Id.* at 8.) The plaintiffs claim that Dolgen has not provided actual evidence that "the store would cease to operate if the plaintiff failed to perform her managerial duties," which, according to the plaintiffs, is the applicable test for whether management was a Store Manager's "primary duty." (*Id.* (citing *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505–06 (6th Cir. 2007)).) Confusingly, the plaintiffs assert that the evidence presented by Dolgen's Declarations would be useful only to show that a particular plaintiff's primary duty was management "based on a comparison of time spent in managerial duties versus non-managerial duties." (*Id.*) But, they argue, that evidence would not establish that the plaintiffs' respective stores would "cease to operate" if they were not there. (*See id.* at 9 ("Not one Dolgencorp declaration addresses that question, despite assertions in the Complaint that all the plaintiffs did the same work as assistant managers.").) Based on that purported failure, the plaintiffs assert that Dolgen will not be able to show that the plaintiffs' primary duty was management and, therefore, that the factfinder "need not consider" the third and fourth elements of the executive exemption defense. (*Id.*) But they also argue that forty plaintiffs have alleged that they did not supervise the equivalent of two or more full-time employees and that, with only limited discovery, these plaintiffs will be able to demonstrate their right to relief at the summary judgment stage. (*Id.* at 19.)

While taking issue with Dolgen's failure to offer particularized proof, the plaintiffs also assert that the court should not consider any of Dolgen's factual assertions not found in the

Complaint and that the court should "limit its joinder inquiry to the allegations of Plaintiffs' Complaint and presume their truth." (*Id.* at 18.) In the same section, they point out that limiting its inquiry to the pleadings now would not prevent the court from severing some or all of the plaintiffs' cases later, after the benefit of discovery, if it becomes clear that the differences between their situations truly govern the resolution of their claims. (*Id.*)

The plaintiffs also argue that, in addition to finding that the criteria for permissive joinder have been met, the court should conclude that the other relevant factors do not weigh in favor of severance, as requiring numerous separate actions would not aid the court in "avoiding prejudice and delay," "ensuring judicial economy," or "safeguarding principles of fundamental fairness." (*Id.* at 12 (citations omitted).)

### C.   Discussion

"[J]oinder rulings are usually not directly appealable," *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010), as a result of which the Sixth Circuit has not frequently reviewed joinder or severance decisions and has not identified a clear test for when claims should be deemed to arise from the same transaction or occurrence. However, it has stated that "[t]he words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits." *LASA Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969); *see id.* ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." (citation omitted)). District courts within the Sixth Circuit endeavoring to determine whether claims arise from the same transaction or occurrence "evaluate whether there is a logical relationship between the claims." *Cruikshank v. Berne Twp.*, No. 2:24-CV-1664, 2024 WL 4588777, at *2 (S.D. Ohio Oct. 28, 2024); *Venture Sols., LLC v. Meier*, No. 21-12299, 2022 WL 3337145, at *11 (E.D. Mich. June 22, 2022); *see also Cypress*

*Creek Equine, LLC v. N. Am. Specialty Ins. Co.*, No. 5:22-CV-00095-GFVT, 2023 WL 3346110, at *2 (E.D. Ky. May 10, 2023); *In re Nissan N. Am., Inc. Litig.*, No. 3:19-CV-00843, 2020 WL 13617558, at *5 (M.D. Tenn. Sept. 22, 2020) (Frensley, M.J.).

However, even assuming *arguendo* that Dolgen's company-wide policy of classifying all Store Managers as exempt employees makes the plaintiffs' claims for overtime pay logically related and thus satisfies Rule 20's transaction test, courts recognize that, "[a]t some point, too many individual plaintiffs, each having to separately litigate their claims, creates a hectic if not unworkable scenario for all involved in the litigation." *Gomez v. Glob. Precision Sys., LLC*, 636 F. Supp. 3d 746, 752 (W.D. Tex. 2022) (denying motion to join 150 new plaintiffs to an FLSA case); *but see Allen v. Atl. Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984) (allowing 22 people to join FLSA suit as named plaintiffs). The court finds that joining seventy-five plaintiffs in one action would make this case unmanageable, would not promote the possibility of settlement, and would not further the interest of judicial economy, as each plaintiff will require different witnesses and different proof for their separate claims. *See Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018). It would be monstrously confusing for the parties and the court[6] to keep the facts relating to each of the seventy-five plaintiffs separate, which gives rise to a strong likelihood of prejudice to both parties if all seventy-five claims were tried together.

The allegations in the Complaint itself make this clear. For example, some plaintiffs allegedly did not supervise the equivalent of two full-time employees while others did, and they had varying degrees of discretion when it came to hiring, firing, and disciplining other employees. (Doc. No. 1 ¶¶ 96(x), 98–102.)While the plaintiffs are correct that the "differences alleged by Dolgencorp are relevant to its defense," that defense is essentially the entirety of this case. That is,

---

[6] Neither party has demanded a jury trial.

while some corporate documents and the testimony of some key corporate witnesses may overlap, Dolgen admits in its Answer that it has adopted a company-wide policy of classifying all Store Managers as exempt. No trial of that issue will be necessary. Rather, the only issue to be resolved at trial will be whether the exemption was appropriately applied to each plaintiff. To satisfy its burden of proof, Dolgen will be required to show, for each plaintiff, that that plaintiff's "primary duty" was "management," that each regularly directed the work of at least two other employees, and that each had the authority to hire or fire or that her hiring and firing recommendations were given particular weight. 29 C.F.R. § 541.100 (Effective: January 1, 2020 to June 30, 2024); *see also* 29 C.F.R. § 541.102 (2016).[7]

The plaintiffs have down-played the importance of the relevant factors, including their experience level and how frequently their District Managers visited their stores, the size of the stores they managed, the stores' sales volume, the staffing needs at each store, employee turnover, the type and frequency of delivery trucks, and so forth. The fact-intensive and individualized nature of the necessary inquiry into each plaintiff's employment setting means that trying these cases together, "[r]ather than expediting the litigation, . . . would [result in] scores of mini-trials

---

[7] The fact that each party cites to a string of cases either granting or denying summary judgment in favor of Dolgen further supports the conclusion that each plaintiff's claim will have to be resolved separately, based on the facts pertaining to that individual's employment. *Compare Kreiner v. Dolgencorp, Inc.*, 841 F. Supp. 2d 897 (D. Md. 2012) (granting summary judgment for Dollar General on the basis that the plaintiff Store Manager was properly classified as exempt); *In re Dollar Gen. Stores FLSA Litig. v. Dolgencorp, Inc.*, 766 F. Supp. 2d 631 (E.D.N.C. 2012) (same); *Wachenschwanz v. Dolgencorp, LLC*, No. 2:12-CV-1037, 2014 WL 907249, at *1 (S.D. Ohio Mar. 7, 2014) (same); *Mayne-Harrison v. Dolgencorp, Inc.*, No. 1:09-CV-42, 2010 WL 3717604 (N.D.W. Va. Sept. 17, 2010) (same); *and Roberts v. Dolgencorp, Inc.*, No. 2:09-0005, 2010 WL 4806792 (M.D. Tenn. Nov. 18, 2010) (same); *with Ely v. Dolgencorp, LLC*, 827 F. Supp. 2d 872 (E.D. Ark. 2011) (finding that material factual disputes precluded summary judgment for the defendant); *Jones v. Dolgencorp, Inc.*, 789 F. Supp. 2d 1090, 1112 (N.D. Iowa 2011) (same); *Myrick v. Dolgencorp, LLC*, No. CIV.A 7:09-CV-5(HL), 2010 WL 146874 (M.D. Ga. Jan. 11, 2010) (same); *Kanatzer v. Dolgencorp, Inc.*, No. 4:09CV74 CDP, 2010 WL 2720788 (E.D. Mo. July 8, 2010) (same).

involving different evidence and testimony regarding each [plaintiff's] factual circumstances." *Botero v. Commonwealth Limousine Serv. Inc.*, 302 F.R.D. 285, 287 (D. Mass. 2014) (citation and quotation marks omitted) (denying a motion for joinder of fourteen plaintiffs asserting FLSA claims).

In sum, different witnesses and documentary proof will be required for each claim, and because a trial with seventy-five individual plaintiffs would be completely unmanageable for the court and the parties, as well as potentially confusing and prejudicial. The court, therefore, finds it appropriate to sever the claims of all of the plaintiffs except that of first-named plaintiff Daniel White, whose claim arose in the Middle District of Tennessee.

## II.  MOTION TO TRANSFER

### A.  Legal Standard

28 U.S.C. § 1404 governs the transfer of civil actions between federal district courts. It provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The "threshold consideration" for a court reviewing a transfer motion under § 1404(a) is whether the action "might have been brought" in the transferee district. *Worthington Metal Fabricators, LLC v. Burgess Steel Fabricators, LLC*, No. 5:13CV2230, 2014 WL 4792796, at *5 (N.D. Ohio Sept. 24, 2014) (citing *Hoffman v. Blaski*, 363 U.S. 335, 339–40 (1960); *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)).

Assuming that showing is made, the statute "give[s] district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). The substantial burden of showing that transfer is warranted falls on the defendant. *Heffernan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th

Cir. 2016); *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 876 (M.D. Tenn. 2019) (Crenshaw, J.). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009). A defendant, therefore, must "make a clear and convincing showing that the balance of convenience strongly favors an alternate forum." *Sacklow*, 377 F. Supp. 3d at 877 (citations omitted).

In ruling on a motion to transfer, a district court must balance the private interests of the parties as well as public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." *Reese*, 574 F.3d at 320; *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (citations omitted). Private interests include the location of willing and unwilling witnesses; the residence of the parties; the location of sources of proof; the location of the events that gave rise to the dispute; systemic integrity and fairness; and the plaintiff's choice of forum. *Sacklow*, 377 F. Supp. 3d at 877 (citations omitted). Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. *Id.* Transfer of venue is not appropriate where it serves only to shift inconvenience from one party to the other. *Id.* (citation omitted).

## B.     The Parties' Positions

Dolgen asks the court to transfer the severed claims "(individually, or in the alternative, by groups) to the various federal districts and divisions where each Plaintiff's claim arose." (Doc. No. 29 at 1.) It argues that transfer is warranted to further "[t]he convenience of the parties and witnesses," as the most important factor, particularly given that the "vast majority of store employees . . . who would serve as important witnesses for Plaintiffs' individual claims would

have to travel long distances to Nashville" and that, aside from the inconvenience factor, the court "lacks the subpoena power even to compel such witnesses to attend trial." (Doc. No. 33 at 19–20.)

The plaintiffs argue in response that transfer under 28 U.S.C. § 1404(a) is appropriate only in rare circumstances and is not appropriate here.[8] It asserts that Dolgen's motion lacks the specificity necessary for the court to individually assess the fairness of transfer, that the convenience of non-party "managers, district managers, or regional managers . . . is no greater if the Court severs Plaintiffs' cases and transfers them from this Court to another," that the deposition of witnesses will take place where they reside regardless of where the case is pending, and that those witnesses' deposition transcripts can be read into the trial record, pursuant to Rule 32(a)(4) of the Federal Rules of Civil Procedure. (Doc. No. 38 at 17.)

In the alternative, the plaintiffs ask that, if the court is persuaded that severance and transfer are proper, they be granted the opportunity to amend their Complaint to bring their claims as a collective action under § 216(b), in recognition of the principle that the "similarly situated" standard under that provision is less stringent than Rule 20's "same transaction or occurrence" standard. (Doc. No. 38 at 21.)

Dolgen does not respond to the latter argument but, in response to the plaintiff's arguments opposing transfer, asserts that the federal courts "operate under the assumption that live testimony is best because 'it can improve credibility determinations'" and that it should not be forced to rely on deposition testimony in lieu of live testimony "just because Plaintiffs wish to join forces by attempting to file suit in one forum." (Doc. No. 48 at 11 (quoting *Babcock & Wilcox Ebensburg*

---

[8] The plaintiffs' reliance on *Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008), is misplaced, simply because *Morgan* proceeded as a collective action under 29 U.S.C. § 216(b), in which representative testimony is permitted.

*Power, Inc. v. Zurich Am. Ins. Co.*, No. 02-299J, 2005 WL 8177292, at *4 (W.D. Pa. July 13, 2005)).)

### C. Discussion

The plaintiffs do not dispute that their individual cases could have been brought in the districts within which they worked for Dolgen, so the threshold consideration for transfer has been satisfied. Transfer, therefore, is permitted under § 1404(a). The question is whether it is appropriate based on the factors referenced above.

### 1. The Plaintiffs' Choice of Forum

While a plaintiff's choice of forum is generally entitled to "substantial consideration," *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008), the level of deference diminishes in certain circumstances. First, "when plaintiffs do not reside in their chosen forum, their choice should be given less weight than would otherwise be the case." *Sacklow*, 377 F. Supp. 3d at 878 (quoting *W.H. by and through His Parents v. Tenn. Dep't of Educ.*, Case No. 3:15-1014, 2016 WL 236996, at *3 (M.D. Tenn. Jan. 20, 2016)). Second, a plaintiff's choice of venue is entitled to less deference where the operative facts occurred elsewhere. *Id.* Thus, for example, in a nationwide class action, deference to the plaintiff's choice of venue is usually given little weight, since few if any plaintiffs may reside in the forum state. *Dantes v. Indecomm Holdings, Inc.*, No. 1:13-CV-1290-JDB-egb, 2014 WL 4161982, at *3 (W.D. Tenn. Aug. 19, 2014); *see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . , the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." (applying analogous common law doctrine of *forum non conveniens* to shareholder derivative suit)).

Here, while four plaintiffs worked in Tennessee, only one of them was employed within this judicial district, and the remaining seventy-one plaintiffs reside, and were employed by the

defendant, in other states. While the case was not brought as a class action or an FLSA collective action, it is similar in that the vast majority of plaintiffs lack a significant connection to the State of Tennessee. Under these circumstances, the plaintiffs' choice of forum is entitled to little weight.

### 2. *The Convenience of Witnesses*

The convenience of witnesses, particularly non-party witnesses, is considered the most important factor in the transfer analysis. *Sacklow*, 377 F. Supp. 3d at 878; *Smith*, 578 F. Supp. 2d at 963. Management-level witnesses employed by Dolgen and within Dolgen's control are not considered non-party witnesses, though former employees, no longer within its control, would be. *Accord, e.g.*, *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 635 (W.D. Mich. 2009). At this point, however, neither party has presented proof regarding the existence of non-party witnesses or their location. This factor, therefore, does not weigh strongly in favor of transfer.

The convenience of party witnesses is also important. With regard to this factor, while Dolgen's corporate-level witnesses appear to be located within this judicial district, the plaintiffs themselves may be presumed to reside within the district where they worked. Dolgen argues that this factor weighs in favor of transfer, because the "vast majority of store employees . . . would have to travel long-distance to Nashville for a lengthy trial," and the court would not have the ability to compel most of such witnesses to attend trial. (Doc. No. 33 at 20.) The plaintiff responds only that those witnesses will be deposed where they reside and that the court does not have to compel their attendance at trial, because they can testify by deposition. The plaintiffs also argue that relevant corporate records and documents are located in this district. Dolgen responds that corporate records are easily conveyed electronically and that credibility of witnesses can best be assessed from live testimony rather than the presentation of depositions, and it argues generally that it would be impracticable and fundamentally unfair to conduct trials far from the plaintiffs' actual place of employment. (Doc. No. 48 at 11–12.)

### 3.     *Weighing the Factors*

The plaintiff's choice of forum is entitled to little weight, and it is clear that the vast majority of witnesses who can attest to the plaintiffs' actual working conditions will be located in or near the districts in which the plaintiffs were employed. While corporate records and documents are located here, those records are easily conveyable. More importantly, the events that gave rise to the plaintiffs' claims occurred at the stores where the plaintiffs were employed, and those districts have a strong interest in deciding controversies that arose within them. Moreover, the daunting logistics and the burden on the court's docket of trying dozens of (severed) cases within this district weigh strongly in favor of transfer. Considered together, with emphasis on practical considerations affecting trial management and the court's docket, the relevant factors weigh strongly in favor of transferring the severed cases to the districts in which each arose.

## III.    THE PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT`

The plaintiffs have requested that, in the event the court is inclined to grant the defendants' motion, they be granted leave to amend the Complaint to pursue a collective action.

In light of this request, the court will grant the defendants' motion but will not, at this juncture, enter an order actually severing and transferring the cases. Rather, the plaintiffs will be granted twenty-one days within which to either (1) file a motion to stay entry of an order severing and transferring the cases and, concurrently, a Rule 15 motion to amend their Complaint to bring this case as a collective action under 29 U.S.C. § 216(b); or (2) file a proposed order severing and transferring the cases by individual plaintiff or groups of plaintiffs to the judicial districts and divisions within which the stores at which the plaintiffs worked are located.[9]

---

[9] Any plaintiffs who worked at stores located within the same judicial district may be grouped together.

## IV.   CONCLUSION

For the reasons set forth herein, defendant Dolgen's Motion to Sever and Transfer (Doc. No. 29) will be granted but the court will defer entry of an order severing and transferring pending the plaintiffs' filing of either a motion to stay and motion for leave to amend or a proposed transfer order. An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge